UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

September 30, 2010

Anthony Mignini, Esq.
Mignini & Raab, LLP
2015 Emmorton Road, Ste. 202
Bel Air, MD  21015

Allen F. Loucks, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Valerie Mackall v. Michael J. Astrue, Commissioner of Social Security, PWG-08-3312**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Valerie Mackall's claim for Supplemental Security Income Benefits ("SSI"). (Paper Nos. 8,12,13). The Plaintiff also filed a Letter Response to Defendant's Motion. (Paper No. 14). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court GRANTS the Commissioner's Motion and DENIES the Plaintiff's Motion.

Valerie Mackall(sometimes referred to as "Claimant" or "Ms. Mackall"), applied for SSI on December 22, 2005, alleging that she was disabled as of November 1, 2002, due to back and knee pain, degenerative disc disease, diabetes mellitus, obesity and depression. (Tr. 17-24, 41, 63). Her claim was denied initially and upon reconsideration. (Tr. 29-34). A hearing was held before an Administrative Law Judge ("ALJ"), the Honorable Raymond M. Faby on May 9, 2008, where Ms. Mackall appeared and testified. The ALJ subsequently denied her claim in a decision dated June

19, 2008. (Tr. 17-24). The ALJ found that although Claimant's diabetes mellitus, degenerative disc disease, degenerative joint disease, and morbid obesity were "severe" impairments, they did not meet or medically equal any of the listed impairments in the Regulations. The ALJ also found that Claimant retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. 20). The ALJ found that Claimant was not able to perform any of her past relevant work ("PRW"), but that considering her age, education, work experience, and RFC there were jobs that existed in the national economy that she could perform.[1] Accordingly, the ALJ found that she was not disabled. (Tr. 23-24). On October 28, 2008, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 5-8).

The Claimant presents several arguments in support of her contention that the Commissioner's final decision is not supported by substantial evidence. She argues that the ALJ erred by relying on the Medical Vocational Guidelines[2] ("GRIDS") in determining there was work Claimant could perform and was required but failed to call a vocational expert ("VE") to testify. She also argues that the ALJ failed to analyze properly her complaints of pain, her morbid obesity and the opinion of her treating physicians. *See* Plaintiff's Memorandum, pp. 12-22. For the reasons that follow, I disagree.

Claimant also argues that her allegations of pain in her back, knees and hands precluded the ALJ from applying the GRIDS to find that she was not disabled. I disagree. The mere presence of nonexertional limitations does not, *per se*, preclude application of the Medical-Vocational Guidelines, as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the guidelines only when the

---

[1]The ALJ found that a finding of "not disabled" was directed by Medical-Vocational Rule 201.25 and 201.19. (Tr. 24).

[2] The Medical Vocational Guidelines (sometimes referred to as the "GRIDS" or the "Guidelines") are defined in 20 CFR Part 404, Subpart P, Appendix 2, and provide rules to be applied in determining whether a claimant is disabled. In applying the GRIDS, an ALJ will examine the Claimant's age, education, work experience, and residual functional capacity to determine which rule applies.

2

limitations are significant enough to prevent a wide range of gainful employment at the designated level. *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). Not every non-exertional impairment precludes reliance on the grids. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Smith v. Schweiker*, 719 F.2d 723, 724-25 (4th Cir. 1984).

The physical abilities necessary in order for someone to be capable of a full range of sedentary work are defined by the Regulations as:
> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR Sec. 416.967

The Social Security Rulings also give guidance and in pertinent part state: "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85-15 (1985 WL 56857 at *4). In this case there is no credible evidence that Claimant had limitations in any of the abilities listed in SSR 85-15 which would erode the occupational base necessitating the assistance of a vocational expert ("VE"). The ALJ's finding that Claimant was capable of the full range of sedentary work is therefore supported by substantial evidence, and the ALJ was not required to call a vocational expert to testify.

Ms. Mackall also argues that the ALJ incorrectly analyzed her complaints of pain and the effects it had on her ability to perform sedentary work. Because pain itself can be disabling, "it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *see also Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980). In this Circuit, it is well-established

3

that an ALJ must follow the two-step process for assessing complaints of pain as set forth in *Craig v. Chater*, 76 F.3d 585,594-596 (4th Cir. 1996). *See, e.g., Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652-653 (D. Md. 1999); *Hill v. Comm'r.*, 49 F. Supp. 2d 865, 868 (S.D.W.Va. 1999). First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment that reasonably could be expected to cause the pain the claimant alleges he or she suffers. *Craig*, 76 F.3d at 594, *citing* 20 C.F.R. §§ 416.929(b) and 404.1529(b). This first prong, however, does not require a determination regarding the intensity, persistence, or functionally limiting effects of the pain asserted. *Id.* This is reserved for the second inquiry, which is an evaluation of the "intensity and persistence of the claimant's pain, and the extent to which it affects the claimant's ability to work." *Craig*, 76 F.3d at 595. Importantly in assessing the intensity and persistence of claimant's pain, claims of disabling pain may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain. 20 C.F.R. §§ 416.929(c)(2) and 404.1529(c)(2).

Here, it is not the first prong of the *Craig* test that is challenged: clearly, the ALJ found that Ms. Mackall suffers from medical impairments reasonably expected to cause pain, namely her back and knee pain.(Tr. 20-23). It is the intensity of her pain and its duration that the ALJ questioned. In the ALJ's opinion, the claimant's statements and testimony regarding her impairments and their impact on her ability to work were not fully credible and were ultimately inconsistent with the treatment history of routine follow ups with her primary physicians, the clinical diagnostic and objective findings, her reported activities of daily living, the reports from examining physicians, her history of medications such as Motrin, and other evidence in the record. (Tr. 21-22). After review of the ALJ's decision, and the entire record, I find the ALJ recognized his duty and evaluated Ms. Mackall's allegations of pain. The ALJ did not rely solely on the existence or nonexistence of objective medical records in judging the intensity and persistence of her pain. Rather, the ALJ also evaluated the evidence submitted by Claimant regarding her activities, the treatments she follows--including medications (primarily percocet and Motrin) and the fact that her prescription regime was unchanged, as well as considering her testimony at the hearing. (Tr. Id.). These factors, coupled with Mr. Mackall's testimony regarding her activities, were appropriately

4

considered,[3] and they provide substantial support for the ALJ's conclusion. Accordingly, there is substantial evidence to support the ALJ's analysis of Ms. Mackall's allegations of pain.

Claimant also argues that the ALJ erred by failing properly to evaluate her obesity and the opinions of her treating physicians in determining whether she was disabled. Based on all of the evidence before me and the ALJ's decision, the undersigned is not persuaded that the ALJ failed to consider the effects of Ms. Mackall's obesity in violation of SSR 02-1p. Ms. Mackall alleges the notations of her obesity in her medical records show her level was actually "extreme" not simply "morbid". *See* Plaintiff's Motion, p. 21. First, the classification of one's BMI is not conclusive evidence that they suffer from obesity or that it is a severe impairment. SSR 02-1p, in relevant part, states:

> "There **is no specific level of weight** or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," **"extreme**," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes.

*See* SSR 02-1p (2000 WL 628049, *4(S.S.A.))(Emphasis added).

Second, the ALJ acknowledged Claimant's obesity as a "severe" impairment in his decision and actually considered it along with her other impairments. For example, the ALJ

---

[3] SSR 96-7p provides: the adjudicator must consider certain factors "in addition to the objective medical evidence when assessing the credibility of an individuals statements": Those factors include 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms ; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board ); and 7. Any other factors concerning the individuals functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p (1996 WL 374186, *2 (S.S.A.))

specifically noted that "claimant's obesity has not caused a listing level impairment in any body system." (Tr. 20). Later in his decision, the ALJ also recognized that "obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five day week or equivalent schedule." (Tr. 19, 20, 21).

Ms. Mackall also argues that the ALJ erred at step four in determining her RFC by failing to consider properly the opinions of her treating physicians. Specifically, she argues that the ALJ failed to adopt Drs. Eshelman & McCoy's opinions that her obesity limited her so that she could not stand or walk for more than 1-2 hours per day. *See* Plaintiff's Memorandum, pp. 20-21. A treating physician's opinion is given controlling weight when two conditions are met 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques and 2) it is consistent with other substantial evidence in the record. See *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 CFR §404.1527(d)(2). While treating source opinions on issues reserved to the Commissioner--such as determining a claimant's RFC--are not entitled to controlling weight, the ALJ must still evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record. In this case, I find that the ALJ fulfilled this duty. The ALJ noted Dr. Eshelman and McCoy's respective opinions that Ms. Mackall could only "sit stand and walk for two hours" and "stand for one hour and walk for half of an hour" and therefore she arguably could not perform even sedentary work. (Tr. 22). However, the ALJ found that both Doctor's opinions were not fully supported by the objective evidence of record.(Tr. Id.). When viewed in its entirety, as is required, the evidence in the record supports the ALJ's determination to afford little weight to Dr. McCoy's opinion. For example, the ALJ discussed evidence that undercuts these opinions, including the opinions of Dr. Albert Folgueras. (Tr. 21-22,89-93). In sum, I fail to find that the ALJ failed to consider the effects of Ms. Mackall's obesity in violation of SSR-02-1p.

Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment and DENIES Claimant's Motion. A separate Order shall issue.

_____/s/_____
Paul W. Grimm
United States Magistrate Judge